No. 20,567.

THE CITY OF KANSAS CITY, KANSAS, *Appellee*, v. HARRY SEA-
MAN, *Appellant.*

SYLLABUS BY THE COURT.

LICENCE TAX—*Missouri Laundry—Collecting from and Delivering Linen
to Patrons in Kansas City, Kan.—Interstate Commerce.* A corpora-
tion, located and doing business in Missouri as a steam laundry, sent
an employee with a wagon to gather up the linen of patrons in Kan-
sas City, Kan., carrying it to the laundry, and when the service
was completed deliver it to the patrons in Kansas and collect the
charges. The employee while so engaged was arrested and fined for
the violation of an ordinance of Kansas City, Kan., imposing a
license tax upon each laundry operated within the city, the amount
to be determined by the number of wagons employed; *held,* that the
conviction is unlawful, *first,* for the reason that the employee of the
laundry company was not conducting a laundry within the city as
contemplated by the ordinance, and *second,* for the reason that collect-
ing the articles in Kansas, carrying them into Missouri, and returning
them to their owners after the service had been performed is inter-
state commerce.

Appeal from Wyandotte district court, division No. 2;
FRANK D. HUTCHINGS, judge. Opinion filed November 11,
1916. Reversed.

*G. W. Stubbs,* and *F. H. Stubbs,* both of Kansas City, Mo.,
for the appellant.

*Hugh J. Smith,* city attorney, *T. M. Van Cleave,* and *Lee
Judy,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was convicted and fined in the
police court of Kansas City, Kan., for carrying on the occu-
pation and business of a laundry within the city without hav-
ing obtained a license under the provisions of a city ordinance.
The district court affirmed the conviction, and he appeals.

The appellant resided in Kansas City, Mo., and was in the
employ of the Fern Laundry Company, a corporation located
in and doing business as a steam laundry in Kansas City, Mo.
Among the customers of the laundry company are people who
reside in Kansas City, Kan. It was the custom of the laundry

company to send the appellant with the company's horse and wagon to Kansas City, Kan., to gather up the linen of its patrons, take it to the laundry, and when it was ready for delivery, return the same to its patrons and collect the charges. The appellant while so engaged was arrested for the violation of an ordinance of the city which provided that no person, firm or corporation, either as principal, officer, agent, servant or employee, shall carry on or operate within the city any calling, trade, or occupation therein specified, without first obtaining a license therefor. The ordinance fixed the occupation tax for the business of laundries as follows:

"Laundry Wagon. Any person or corporation conducting, pursuing or carrying on a laundry business by collecting or delivering laundry by means of a wagon or other vehicle, for each wagon or vehicle, $10."

We construe the ordinance as imposing an occupation tax upon the laundry business, the amount of the tax against the business being determined by the number of wagons employed therein.

There are two reasons why we think the judgment convicting the appellant must be reversed. First, he was not carrying on the business of a laundry within the city and therefore was not within the terms or contemplation of the ordinance. The laundry was conducted in Kansas City, Mo. He was engaged solely in collecting and distributing articles to be laundered in Missouri. He had no place of business in Kansas City, Kan., but was simply using the streets for the lawful purpose of transporting from that city to the state of Missouri articles to be laundered and to return them to the owners when the service was completed.

Second, in the course of his employment the appellant was engaged in interstate commerce. The appellee insists that there was no commerce involved, or at least, that commerce was only incidental to the business, because there was no barter or sale of personal property. A number of decisions are cited in which "trade, barter, sale or transportation involving trade, barter or sale" are spoken of as constituting the elements of interstate commerce. In the appellee's brief it is said:

"The contract between the laundry company and its customers is, that the company will take, wash and return the clothing. The trans-

action is for a personal service with reference to property owned by the customer. No goods are sold by the company. They have nothing but their services to sell."

It is seriously insisted that interstate commerce has been defined by the federal courts to involve only the transfer of the title to personal property and its transportation, and the business of transporting passengers or intelligence. But certain services are held to be commodities. In *International Textbook Co. v. Pigg,* 217 U. S. 91, it was held that teaching by correspondence, the business of imparting knowledge, is interstate commerce when conducted between residents of different states, because teaching is a service. In the case at bar there was a sale of service involving transportation between the homes of the customers in Kansas and the place where the service was performed in Missouri.

One of the cases relied upon by the appellee, which illustrates its attitude as regards the claim that appellant was employed in interstate commerce, is *W. W. Cargill Co. v. Minnesota,* 180 U. S. 452. In that case Cargill owned a number of grain elevators located upon the rights-of-way of interstate railways. At these elevators he purchased grain from citizens of Minnesota and shipped it in carload lots to points in other states, the grain being purchased for the express purpose of shipping as Cargill's property to his terminal elevators in Wisconsin and Illinois. A statute of Minnesota required grain elevators operating in that state to pay a license fee. The court held that the statute imposing the license was valid for the reason that it had reference only to the business of the defendant at his elevators and warehouses in Minnesota, "in respect of business conducted at an established warehouse in the state between the defendant and sellers of grain." (p. 470.) The Minnesota case does not support the contention of the appellee. If the laundry company were resisting the imposition of a license tax by the state of Missouri on its business conducted there, upon the theory that some, or a large part of its business was interstate, the Minnesota case would be an authority upholding the power of the state of Missouri to levy such a tax for the reason that the tax would be imposed in respect to a business conducted in an establishment located in Missouri. Or if a person conducting a laundry business in

Kansas City, Kan., sought to avoid the license tax imposed by the ordinance in question, by claiming that its customers resided in Missouri, the Minnesota case would uphold the authority of the city to levy such a tax in respect to the business actually carried on within the city.

Undoubtedly there were some features of the business conducted by the laundry company which involved interstate transactions. The sending of its wagons into another state with agents to collect articles to be laundered, the transporting of the same to its place of business in Missouri, and returning the articles to the owners in Kansas after the work had been completed, involved trade and intercourse. In *Gibbons v. Ogden*, 22 U. S. 1, Chief Justice Marshall said: "Commerce undoubtedly, is traffic, but it is something more; it is intercourse." (p. 189.) Anything which can be bought and sold is a subject of commerce. (*Butler Bros. Shoe Co. v. United States Rubber Co.*, 156 Fed. 1, 17.) In *International Textbook Co. v. Pigg*, 217 U. S. 91, it was held that—

"Intercourse or communication between persons in different states through the mails and otherwise, and relating to matters of regular continuous business, such as teaching by correspondence, and the making of contracts relating to the transportation thereof, is commerce among the states within the commerce clause of the Federal Constitution." (Syl.)

When a resident of Kansas contracts with an individual doing business in Missouri, that the latter will mend a pair of spectacles for him, and the one who engages to perform the service agrees to send into this state for the article which is to be repaired, take it to his place of business in Missouri, and after the service has been performed, return it to the owner, the servant or agent of the individual in Missouri, while engaged in transporting the article to Missouri and returning it to the owner in Kansas is engaged in trade and intercourse between individuals of different states. The servant or agent of the one performing the service is not, while so engaged, carrying on the business of mending spectacles; that business is carried on in Missouri.

A wholesale grocer in Missouri who sells goods there to a retail dealer in Kansas, under a contract which requires him to deliver them in Kansas, may send them by his own wagon to the customer's place in Kansas. In such a transaction he, and of course his agents, are engaged in interstate commerce.

His traveling men who solicit business in Kansas are not engaged in conducting a wholesale grocery in this state, nor can they be required to pay a local license tax. (*Kinsley v. Dyerly,* 79 Kan. 1, 98 Pac. 228, and cases cited in the opinion; Note 19 L. R. A., n. s., 297, 316.) Since the decision of *Delamater v. South Dakota,* 205 U. S. 93, an exception to the general rule exists in the case of intoxicating liquors because of the provisions of the Wilson act and other recent acts of congress touching the control of such liquors.

Instances might be multiplied of cases involving transactions between citizens of different states whereby the owner of personal property in one state sends it to an individual, firm or corporation in another state to have some service or labor performed upon it there, and afterwards to be returned to the owner in Kansas. The collecting and transporting of the thing from one state to another, and the return of it after the labor and service has been performed, is trade and intercourse between citizens of different states.

While engaged in collecting articles to be laundered, or in returning them to the owners in Kansas after the labor and service had been performed in Missouri, the appellant, as the servant and agent of his employer, was not carrying on the laundry business in Kansas; and for that reason alone was not within the provisions of the ordinance which purports to levy an occupation tax upon persons carrying on such business within the state. If the ordinance were given the construction contended for by the appellee, grievous burdens might be imposed by one state by the enactment of laws and ordinances which would embarrass traffic, trade and intercourse between the citizens of different states.

It follows that the appellant is not amenable to the provisions of the ordinance, and his conviction for its alleged violation is void. The judgment will be reversed and the case remanded with directions that appellant be discharged.